E. M. TILLMAN v. GUS JANKS.

(No. 3367.)

APPEAL from Harrison County. Opinion by WHITE, P. J.

T. P. YOUNG, counsel for appellant.

M. R. GREER, counsel for appellee.

§ 172. *Sale of personal property; possession of, remaining with vendor, prima facie fraudulent; estoppel; facts held to establish; case stated.* One Irvine, who was running a saloon in the city of Marshall, owed appellant, Tillman, $600, and owed appellee, Janks, $1,200. He was indebted to other parties, and both Tillman and Janks knew him to be in failing circumstances, if not entirely insolvent. On the 25th of March, one Strauss, as agent of Tillman, purchased of Irvine for Tillman three barrels of whisky which were in the saloon, for which Irvine was to be credited $225 on his indebtedness to Tillman. This trade took place about noon, and Irvine executed a bill of sale to Tillman for three barrels of whisky, in which they were sufficiently identified. The whisky was not removed by Strauss from the saloon, but was left there at Irvine's request, who informed Strauss, the agent, that he was then negotiating a trade with another party, by which he expected to sell his entire saloon. Strauss testifies: "I wanted to move the whisky at once, but Irvine requested me not to do so right then and there, as he was about to make a sale of his business, and if parties knew of it, or see a part of the stock removed, they would think wrong about it, and may interfere in his trade." Shortly after this, Strauss came back to the saloon and told Irvine that he would send a wagon in a few minutes for the whisky, but Irvine refused to let him take it for fear of violating the United States revenue laws. Nothing further was said or done

by these parties in the matter, and the whisky remained in the possession of Irvine in the saloon, as it had been before the trade.   At 4 P. M. the same day, Irvine concluded a trade with Janks, by which he sold out and delivered to Janks everything in the saloon, including the three barrels of whisky previously sold to Tillman as aforesaid, and Janks took immediate possession of the property.   At the time of his purchase Janks had no notice that the three barrels of whisky had been previously sold to Tillman, but was told by Irvine that it was his, Irvine's, property.   Nor did Janks know of Tillman's bill of sale or claim to the whisky until 8 or 9 o'clock P. M.,— some four or five hours after he had taken possession,— when Strauss came and claimed and wanted to remove it, which Janks declined and refused to permit him to do.   Tillman instituted this suit by sequestration to recover the three barrels of whisky.   The case was tried by the court and judgment was rendered for defendant, Janks, the court filing conclusions of fact and law.

It is unquestionably a general rule in this state that a sale of chattels is complete whenever it is the intention of the parties that the title to them shall pass from the vendor to the vendee, and ordinarily the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in the possession of the vendor.   [1 Civil Cas. Ct. App., § 927; Griffin v. Chubb, 7 Tex. 603; Blanton v. Langston, 60 Tex. 149; Brewer v. Blanton, 66 Tex. 532; Hopkins v. Partridge, 71 Tex. 607; Robertson v. Hunt, 77 Tex. 321.]   "In a sale of personal property, actual delivery is not necessary to the transmission of title."   "A full and free power of disposal of chattels is an essential and inherent incident of ownership, and the vendee has the same right to leave them in the possession of the vendor that he would have to take them

into his own or place them in the possession of a third person. Such possession by the vendor might be and is *prima facie* evidence of fraud, yet the nature and character of the possession may be explained, and, if shown to be consistent with fair dealing, the *prima facie* case would be overcome. [1 Civil Cas. Ct. App., §§ 639, 910, 911, 927.] But there is another rule well settled to the effect that the intent of parties, when clearly ascertained, is of controlling force in determining when a sale of chattels has been executed." "In general, where anything remains to be done by the seller of goods as between him and the buyer before delivery, the buyer acquires no complete present right of property." [Woods v. Half, 44 Tex. 633; Cleaveland v. Williams, 29 Tex. 204.]

In the case we are considering it was not the intention of Irvine, at least, that the title and possession of the three barrels of whisky should pass immediately and directly with the bill of sale. This, however, did not affect Tillman's rights. As between these parties, the title was perfect and complete in Tillman. It was his, and, when upon his demand for it Irvine refused to deliver, he could immediately have instituted suit by sequestration and recovered the property. This he did not do, but, on the contrary, suffered his property to remain in the hands of the vendor, Irvine, thereby, in law, giving the transaction *prima facie* a fraudulent character as to the rights of all third parties. More than this, he suffered his property to remain in his vendor's hands, and took no steps to recover it after he had been apprised by Irvine and knew that he desired it so to remain in his hands in order that he (Irvine) might use it in the sale of his saloon. In other words, he was fully apprised and put upon notice that Irvine intended, by means of these three barrels of whisky, to perpetrate an actual fraud upon some innocent third party. Knowing this fact, and failing to remove the whisky, he should be held in equity and good conscience to have connived at and to be a

party to the fraud when completed. The transaction, then, when Irvine sold to Janks, as between Tillman and Janks, was not only *prima facie* fraudulent (the vendor, Irvine, being in possession), but it became, as between Tillman and Janks, fraudulent in fact on the part of both Irvine and Tillman at Janks' purchase, because Irvine sold property as his own which he had already sold to another, and Tillman permitted the fraud to be perpetrated by means of his property, and thereby acquiesced in and became a party to the actual fraud. He has not only failed satisfactorily to explain the *prima facie* fraud of the original transaction, but, on the contrary, the facts are incapable of explanation otherwise than that he was willing to see committed and did connive at the commission of a positive fraud upon Janks. As between himself and Janks, he is estopped from denying or controverting the fraud. Fraud vitiates all transactions as to the rights of innocent third parties.

Both Tillman and Janks were creditors endeavoring to collect an antecedent indebtedness. The question of innocent purchaser without notice is not involved in the case. But whether the technical doctrine of innocent purchaser without notice can be invoked or not by appellee, Janks, can, in the view we take of the case, avail the appellant, Tillman, nothing, since he (Tillman), by suffering his vendor, Irvine, to remain in possession, and with a knowledge of the purposes and intention of the latter, enabled him to perpetrate a fraud upon innocent third parties; and he is thereby estopped from claiming that because Janks was a creditor solely he is not entitled to protection against the intended or actual fraud. So far as the record shows, Janks appears to have acted innocently, without notice, in good faith, and without intentional injury or prejudice to the rights of any one. We are of opinion the court below properly rendered judgment upon the facts of the case in favor of appellee.

. November 29, 1890.                    Affirmed.